[No. E054638. Fourth Dist., Div. Two. Dec. 17, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY WICKHAM, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 1., 2., and 3.

**COUNSEL**

David L. Annicchiarico, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia, Peter Quon, Jr., and Linh Lam, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Defendant challenges the more than $133,000 the trial court ordered him to pay to his elderly victim after defendant pled guilty to one count of theft by false pretenses (Pen. Code, § 532, subd. (a))[1] in exchange for a 16-month prison sentence. Defendant contends the court abused its discretion when it (1) failed to state on the record the factual basis for and calculation of the restitution amount; (2) overstated the amount the victim lent to defendant; (3) understated the amount defendant repaid to the victim; and (4) allowed the victim to recover interest on loans that violate California usury laws. As discussed below, we reject each of these arguments and affirm the restitution order.

### FACTS AND PROCEDURE

Defendant met the elderly[2] victim, Mr. Griffin, through a mutual acquaintance in early 2007. Thereafter began a series of transactions in which Mr. Griffin would lend defendant money for various schemes. Defendant repaid some of the money, but not all, and did not keep accurate records. Mr. Griffin testified at the restitution hearing that he would return a promissory note to defendant when defendant repaid it. Mr. Griffin provided copies of eight unpaid promissory notes, along with bank records of checks written to him by defendant that were received, dishonored, and, according to Mr. Griffin, contained his forged endorsement. Defendant also testified and produced copies of cancelled checks purporting to show amounts he repaid to Mr. Griffin. From this testimony and these records, the trial court ultimately determined the restitution award that defendant challenges.

In January 2007, Mr. Griffin lent defendant $6,250 "to buy a gold deal out of Mexico." Mr. Griffin lent defendant another $6,250 for the same purpose in November of that year. Both loans were secured by promissory notes

---

[1] All section references are to the Penal Code unless otherwise indicated.

[2] An investigator from the Riverside County Sheriff's Department testified that when he spoke with Mr. Griffin in early 2010, Mr. Griffin was in his early 90s.

stating an interest rate of 12.9 percent. According to Mr. Griffin's testimony neither note was ever repaid.

In January of 2008, defendant and Mr. Griffin executed a promissory note for $7,100, at 15 percent interest. According to Mr. Griffin, this note was to replace a previous promissory note for a lesser amount, which defendant either tore up or took with him, plus an additional amount of cash that defendant wanted. Mr. Griffin testified that defendant never repaid that note.

In October of 2008, defendant executed a promissory note for $56,000 at 0 percent interest. Mr. Griffin testified that the note included $6,000 in interest up front because he had to obtain the money as a cash advance from his credit cards. Defendant was supposed to pay $4,000 per month on this note, but he did not repay any part of the $56,000.

In November of 2008, defendant executed a promissory note for $21,000 at 0 percent interest. Defendant was supposed to make monthly payments of $1,500, but he failed to do so.

In December of 2008, defendant executed a promissory note for $4,000. Mr. Griffin testified that he did not charge defendant any interest on this note because it was to be paid back the following month. Mr. Griffin testified that "Sometimes I let him have money like that if he was gonna pay it back in one month." Defendant gave Mr. Griffin a check for $10,000 to repay this note and "[t]o pay off on some of his bills," but that check bounced. It appears from Mr. Griffin's testimony that this bounced check prompted him to contact authorities.

In April of 2009, defendant executed the last two unpaid promissory notes on the same day, each for $10,600. One stated an interest rate of 12.9 percent, the other 12.8 percent. One of the notes listed as security three vehicles owned by defendant. Defendant defaulted on the note, but did not give Mr. Griffin the vehicles. Mr. Griffin obtained the vehicles after defendant was arrested.

Mr. Griffin testified that he received various checks from defendant, many of which were dishonored by the bank or contained Mr. Griffin's forged signature endorsing the check.

During his testimony, Mr. Griffin stated regarding his financial situation after his dealings with defendant, "I don't got no money now. I got all this money on credit cards, and I been trying to pay them. But I ain't missed a payment, though."

Mr. Griffin contacted police sometime in 2009. The sheriff's department investigator testified that, after he interviewed Mr. Griffin in February of 2010 and obtained copies of the eight promissory notes and some checks Mr. Griffin had written to defendant, he contacted defendant to go over the accusations. Defendant cancelled scheduled meetings at least twice, and the two never met in person. Defendant wrote up a new promissory note for $156,000 at 12 percent interest, and attempted to get Mr. Griffin to sign it. Acting on the investigator's advice, Mr. Griffin declined. The unsigned promissory note was entered into evidence. Defendant admitted during his testimony that he drafted the $156,000 note in an attempt to "keep this a civil matter and not get the police involved." He testified that he relied on Mr. Griffin's estimate of what defendant owed him to come up with that amount.

On February 25, 2010, the People filed a felony complaint alleging defendant in count 1 committed theft and embezzlement from an elder or dependent adult (§ 368, subd. (d)) and in count 2 obtained money by false pretenses (§ 532, subd. (a)). As to both counts, the People alleged defendant took property exceeding $65,000 (§ 12022.6, subd. (a)(1)). As to count 2, the People alleged defendant committed a pattern of two or more theft- or fraud-related felonies resulting in a loss of more than $100,000 (§ 186.11, subd. (a)(1)). The People further alleged that defendant had one prior "strike" conviction for bank robbery. (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1).)

On June 18, 2010, defendant pled guilty to count 2. The court sentenced defendant to the agreed low-term sentence of 16 months, with credit for 232 days.

The hearing on restitution to Mr. Griffin was held on March 4 and August 12, 2011. On September 28, 2011, the court ordered defendant to pay Mr. Griffin victim restitution in the amount of $133,848.47,[3] plus 10 percent interest per year beginning on that date. This appeal followed.

---

[3] The record transcript for September 28, 2011, shows the court ordered victim restitution in the amount of $133,848.47. The minute order for that date shows the restitution amount as $133,484.47. As a general rule, when the record of the court's oral pronouncement regarding sentencing conflicts with the clerk's minute order, the oral pronouncement controls. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [121 Cal.Rptr.2d 603, 48 P.3d 1155]; *People v. Mesa*

### Discussion

1.–3.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### 4. *The Prejudgment Interest Awarded Conforms with the Law*

Defendant argues the trial court made an error of law when it awarded defendant prejudgment interest of 10 percent on five of the promissory notes because these notes on their faces state usurious interest rates that are above the legal limit. Specifically, defendant cites to *Rochester Capital Leasing Corp. v. K & L Litho Corp.* (1970) 13 Cal.App.3d 697, 703 [91 Cal.Rptr. 827] for the proposition that the principal of a usurious transaction can be recovered in a civil action, but no interest at all can be recovered.

Neither the parties nor this court could find case or statutory law directly on point, that is, concerning whether a victim who is fraudulently induced to lend a defendant money at an interest rate higher than 10 percent can collect the legal rate of interest when the defendant is ordered to pay victim restitution. However, based on the purposes underlying the usury laws, the principle of "unclean hands," and the interest provisions set forth in section 1202.4, subdivision (f)(3)(G), we are not persuaded that the trial court acted incorrectly when it awarded Mr. Griffin 10 percent prejudgment interest on five of the loans.

██ We agree with the People's argument that "the law pertaining to determining victim restitution amounts compel a finding that a defendant who fraudulently obtains money from victims, such as [defendant] did in this case, has 'unclean hands' and should not be allowed to benefit from civil cases precluding the reimbursement of any interest rate to the victim."

The purpose of the usury laws is " 'to protect the necessitous, impecunious borrower who is unable to acquire credit from the usual sources and is forced by his economic circumstances to resort to excessively costly funds to meet his financial needs. . . .' [Citation.]" (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 804–805 [35 Cal.Rptr.2d 418, 883 P.2d 960].) Here, defendant was not a poor, needy borrower who had no choice but to borrow money from Mr. Griffin to meet his financial needs. Rather, defendant told Mr. Griffin that he borrowed some of the money to invest in Mexican gold and "lumber

---

(1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040].) Therefore, the corrected restitution amount is $133,848.47.

*See footnote, *ante*, page 232.

deals," not to buy food or pay rent. Further, the record shows that defendant did not intend the transactions as loans secured by his enforceable promise to repay, but rather as a means to obtain money from Mr. Griffin under false pretenses. Defendant had a history of fraud and theft-related convictions for amounts more than $100,000 and, in fact, pled guilty to obtaining money from Mr. Griffin by false pretenses.

■ The doctrine of unclean hands prevents a party from obtaining either legal or equitable relief when that party has acted inequitably or with bad faith relative to the matter for which relief is sought. (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 638–639 [41 Cal.Rptr.2d 329].) Here, defendant seeks the protection of usury laws to counteract the restitution statute discussed below, in order to avoid not just the usurious interest rates set forth in five of the promissory notes, but rather to avoid paying any prejudgment interest on those notes at all. Again, defendant pled guilty to obtaining by false pretenses the money that was the subject of these notes. This is a textbook case of defendant acting "with bad faith relative to the matter for which relief is sought."

■ Finally, section 1202.4, subdivision (f)(3)(G),[8] specifically *requires* the trial court to order a criminal defendant to make restitution to the victim based on the amount of the loss claimed by the victim. The order *must* fully reimburse the victim for every economic loss caused by the defendant's criminal conduct, including 10 percent interest as of the date of the loss. This statute clearly authorized the trial court to impose 10 percent interest as of the date of the loss on each of the eight promissory notes, not only on the five notes that specified interest, but on the three notes for which zero interest was to be collected.

■ For these combined reasons—the lack of applicable case law to support his argument, the purpose of the usury laws, unclean hands, and the restitution statute itself—defendant has not convinced this court that he should be excused from paying any prejudgment interest at all on the five interest-bearing promissory notes.

---

[8] That section reads, "(f) . . . in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (G) Interest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court." (§ 1202.4, subd. (f)(3)(G).)

## DISPOSITION

The trial court's restitution order is affirmed.

Richli, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 14, 2014, S215749.